UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PACIFIC INDEMNITY COMPANY, )
as subrogee of Peter I. Higgins and )
Bonnie H. Higgins, )
 )
      Plaintiff, )
  v. ) CIVIL ACTION
 ) NO. 12-11638-JGD
GIOVAN C. DALLA POLA, )
Individually and doing business as )
GDP PAINTING, )
 )
      Defendant. )

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION TO EXCLUDE OPINION
OF PLAINTIFF'S EXPERT AND FOR SUMMARY JUDGMENT**

December 15, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

This subrogation action arises out of a fire that occurred on August 25, 2011 at the home of Peter I. Higgins and Bonnie H. Higgins. At the time of the fire, the Higginses' property was insured by the plaintiff, Pacific Indemnity Company ("Chubb"). After Chubb made payments to the homeowners under the terms of their policy, it brought this action, as subrogee of Mr. and Mrs. Higgins, against Giovan C. Dalla Pola ("Dalla Pola"), a house painter who had been performing painting and carpentry work at the property shortly before the fire broke out. Chubb claims that the fire was caused by the spontaneous combustion of materials that had been left in the garage by Dalla Pola's

painting crew. By its complaint, Chubb has asserted claims against Dalla Pola individually, and doing business as GDP Painting, for negligence and breach of contract.

The matter is presently before the court on the "Defendant's Motion to Exclude Plaintiff's Expert Opinion and Motion for Summary Judgment" (Docket No. 32). By his motion, Dalla Pola is requesting an order excluding the opinion of Chubb's expert witness, Thomas Klem ("Klem"), regarding the origin and cause of the fire, and granting him judgment as a matter of law on both of the plaintiff's claims against him. Dalla Pola contends that Klem's testimony attributing the cause of the fire to the plaintiff's painting company is inadmissible because it is based on factual assumptions that have no support in the evidentiary record. He further argues that there is no evidence, other than Klem's inadmissible opinion, to show that he or any of his workers were responsible for the fire. Accordingly, Dalla Pola contends that summary judgment is warranted in his favor.

For all the reasons detailed below, this court finds that the record contains evidentiary support for Klem's opinion, and that the defendant's challenge to his testimony raises issues of credibility rather than admissibility. Thus, while Dalla Pola may attempt to discredit Klem's testimony through the use of evidence and cross-examination at trial, his motion to exclude the opinion of plaintiff's expert and for summary judgment is DENIED.

## II. STATEMENT OF FACTS[1]

---

[1] The facts are derived from (1) the Defendant's Statement of Material Undisputed Facts in Support of His Motion for Summary Judgment (Docket No. 33) ("DF"); (2) the exhibits

The following facts are undisputed unless otherwise indicated.

As described above, this case arises out of a fire that occurred on the morning of August 25, 2011 at the home of Peter and Bonnie Higgins in Lincoln, Massachusetts. (DF ¶ 9; Pl. Ex. A at 1). Earlier that summer, the Higginses had hired Dalla Pola and his company, GDP Painting, to perform painting and carpentry work at their residence. (Id. ¶ 1; Pl. Ex. B at 18). The plaintiff claims that the fire was caused by the spontaneous combustion of materials that the defendant improperly and carelessly stored or discarded inside the Higginses' two-car garage, and it is seeking to hold the defendant liable for over $1.9 million in damages. (See Compl. (Docket No. 1) ¶¶ 9-10; Def. Mem. (Docket No. 36) at 1).

By the time the fire occurred, Dalla Pola and his crew had been working at the insureds' home on and off for several months. (DF ¶ 3). As part of that work, the defendant and his employees were responsible for painting the home's exterior, repairing rotten boards on the back deck, sanding and staining a wooden staircase on the outside of the house, and sanding and staining a wooden walkway adjacent to the garage. (DF ¶ 2; Pl. Ex. A at 4; Pl. Ex. B at 18). Both Peter and Bonnie Higgins observed that Dalla Pola maintained a tidy operation, and neither of them remembered seeing any rags or bags of sawdust lying in the garage where the painters stored their supplies and equipment. (See

---

attached to the Affidavit of Matthew W. Perkins (Docket Nos. 34 & 35) ("Def. Ex.__"); (3) the Plaintiff's Answer to Defendant's Statement of Undisputed Fact (Docket No. 37) ("PA"); (4) the Plaintiffs' Counter Statement of Fact ("PF"), which is set forth on page 14 of Docket No. 37; and (5) the exhibits attached to the Affidavit of James P. Cullen (Docket No. 39) ("Pl. Ex. __").

DF ¶¶ 4-8; Def. Ex. 1 at 10, 35; Def. Ex. 2 at 28-29, 31). Nevertheless, the record contains facts showing that the fire originated inside the garage, in the area that was used by the painters.

## Events Surrounding the Fire

On August 24, 2011, the day before the fire, Marcus Pereira ("Pereira"), one of Dalla Pola's employees, was working at the Higginses' property. (DF ¶¶ 28, 30). Pereira was responsible for painting and power washing at the insureds' home, but he did not perform any carpentry work. (DF ¶ 31). The parties agree that Pereira was the last member of Dalla Pola's work crew to leave the property prior to the outbreak of the fire. (DF ¶ 34; PA ¶ 32). As detailed below, statements attributed to Pereira immediately following the fire provide factual support for Klem's opinion regarding the likely source of the fire.

The record indicates that the Higginses' 13-year old son, Harrison, was at home on the day before the fire waiting for the painters to complete their work so he could leave the house to visit a friend. (DF ¶¶ 10-11, 14). While he was waiting, Harrison observed one of the painters carrying materials out of the garage and loading them into his vehicle. (Def. Ex. 3 at 14-18). Although Harrison was not able to identify the painter by name, the record indicates that it must have been Pereira, since he was the last worker from the defendant's company who was on the property that day. (See id. at 14; DF ¶ 34). After the worker left the job site, Harrison went into the garage to retrieve his bike. (DF ¶ 18). Harrison did not notice any rags, trash bags or spills during the brief period of time when

he was in the garage. (See id. ¶¶ 20-25, 27; Def. Ex. 3 at 39-40; Def. Ex. 4). Nor did he see anything that appeared to be out of place, or smell any open cans of paint or stain. (DF ¶¶ 26-27).

The fire occurred at approximately 5:00 a.m. on August 25, 2011. (See Pl. Ex. A at 11). Members of the Lincoln Fire Department responded to the Higginses' home and were able to put out the fire. (See id. at 3). Nevertheless, the incident caused heavy smoke damage throughout much of the insureds' residence. (Id. at 1).

After the fire was extinguished, Lincoln Fire Investigators Lieutenant Frank Gray and Mike O'Donnell performed an investigation into the cause and origin of the fire with assistance from John Bolli, the Lincoln Electrical Inspector. (Id. at 3). Trooper Peter Bramante from the Massachusetts State Police was called to participate in the investigation as well. (Id.). The investigation involved an on-scene examination, as well as interviews with various witnesses, including members of the Higgins family, Dalla Pola and Pereira. (Id. at 4-5). Trooper Bramante described the results of the investigation in a Massachusetts State Police Report of Investigation and in an accompanying Fire Investigation Summary Report ("Summary Report"). (Pl. Ex. A).

Significantly, in his Summary Report, Trooper Bramante described statements that Pereira had made to him during the course of the investigation. (See id. at 4; Pl. Ex. K at 26-27). According to Trooper Bramante, Pereira stated that on the day preceding the fire, he had been working on the wooden walkway immediately adjacent to the garage, as well as on the wooden staircase located on the exterior of the house. (Pl. Ex. A at 4). Pereira

-5-

further stated that his work had involved sanding and staining, and that he had removed the rags that had been used during the staining process, as well as the brush that he had used for the staining, at the time he left the Higginses' property for the day. (Id.). Reportedly, Pereira also told Trooper Bramante that "he [had] left a large cloth bag of sawdust located between the chimney and metal rack located to the right of the chimney" in the insureds' two-car garage. (Id.; Def. Ex. 7 at 26-27). Trooper Bramante noted that the investigators had discovered numerous cans of paint and stain in that area of the garage during their examination of the premises. (Pl. Ex. A at 3).

Pereira is Brazilian, and his primary language is Portuguese. (DF ¶ 29). During his conversation with Pereira, Trooper Bramante recognized that English was not Pereira's first language. (Id. ¶ 43; PA ¶ 43). Accordingly, Trooper Bramante had to repeat several of his questions in order to avoid any miscommunication. (Def. Ex. 7 at 24). Nevertheless, he was able to carry out the interview with Pereira and could understand his responses. (See id. at 24-27).

Based on his investigation, Trooper Bramante determined that the fire originated inside the Higginses' two-car garage, immediately adjacent to the metal shelving rack and to the right of the chimney. (Pl. Ex. A at 3). He also concluded that the fire was accidental, and was likely caused by spontaneous combustion involving the cloth bag of sawdust that Pereira had left inside the garage. Thus, as Trooper Bramante reported:

> As a result of our scene examination, coupled with witness interviews, it is my opinion and the collective opinion of the other investigators with whom I worked, that the cause of the fire was

> accidental. Further, *we opine that the most probable cause of this fire was spontaneous combustion involving the cloth bag of sawdust and other possible materials*. All other possible sources of accidental ignition were eliminated. Further, there is no evidence to suggest or information to indicate that this fire was intentionally set.

(Id. at 4 (emphasis added)). Lieutenant Gray concurred with Trooper Bramante's conclusion as to the origin of the fire, as well as with his assessment that the fire was probably caused by the spontaneous combustion of materials that had been left in the garage by the painters. (Pl. Ex. H at 54-56). There is no dispute, however, that no physical evidence of sawdust or a cloth bag were ever recovered from the fire scene. (DF ¶¶ 52-53; PA ¶¶ 52-53).

### **Plaintiff's Expert Investigation**

On August 25, 2011, the day of the fire, Chubb's claims adjuster retained Klem and William Hurteau ("Hurteau") to perform an investigation on its behalf regarding the cause and origin of the fire. (DF ¶ 56; Pl. Ex. G at 3-4). Klem is a Certified Fire Investigator, and Hurteau is a Fire Protection Engineer with the firm of TJ Klem and Associates, LLC. (See Pl. Ex. G at 1, 8). The record indicates that they performed an origin and cause investigation during the time period from August 26, 2011 through September 8, 2011. (Id. at 3-6). The investigation included an examination and reconstruction of the fire scene, and discussions with various individuals including the homeowners, Dalla Pola, officials from the Lincoln Fire Department and representatives from the State Fire Marshal's office. (Id. at 3-5). It also included a review of Trooper Bramante's Summary Report, the identification of materials that remained in the garage,

an electrical analysis involving the assistance of an outside electrical engineer, and the collection of evidence from the area where the fire occurred. (Id. at 2-6). The defendant does not dispute that this process complied with "long accepted methodologies for a scientific-based investigation" involving the application of the National Fire Protection Association 921 Guide for Fire & Explosion Investigations. (See id. at 6). In fact, the defendant's expert witness, Michael E. Hennessy, relied on the same methodology to evaluate the origin and cause of the fire. (See Def. Ex. 11 at 1). The results of Klem's and Hurteau's investigation, including Klem's conclusions and opinions, are described in an 8-page Fire Investigative Report, which has been designated by the plaintiff as its expert witness report for purposes of this litigation. (Pl. Ex. G at 1-8).

Notably, during their examination and reconstruction of the fire scene, Klem and Hurteau discovered a mat containing a substance that appeared to be the remains of staining material. (Id. at 5). As indicated in their Fire Investigative Report, the mat had come from the base of a staircase, which was located near the area where a metal shelving unit was determined to have been located. (Id.). There is no dispute that the metal shelving unit contained cans of paint and a can of stain. (DF ¶ 58). Klem determined, based on witness interviews, that the painters had used the shelving unit to store their work-related materials. (Pl. Ex. G at 5). Chubb's investigators collected all of the remaining paint cans from the garage, and sent the cans containing product, along with the floor mat, to an outside laboratory for testing by a forensic chemist. (Id. at 6). The test results revealed that one of the cans contained "a high level of polyunsaturated

fatty acids with a high tendency to self heat" while a second can and the floor mat "contained a moderate level of polyunsaturated fatty acids with a moderate tendency to self heat." (Pl. Ex. D). In addition, the testing identified the substance in the second can as a possible source of the product that was found to be on the floor mat. (Id.).

At the completion of his investigation, Klem determined that the fire at the insureds' home originated in the area of the metal shelving unit "near the steps of the garage leading to the exterior porch area where staining and sanding took place the day before the fire." (Pl. Ex. G at 6). He further determined that the fire was caused by the spontaneous combustion of contaminated materials that had been used by the painters in connection with their work at the Higginses' property. (DF ¶¶ 59-60; Def. Ex. 8 at 40-41). In particular, Klem opined that there were two scenarios that may have resulted in the spontaneous ignition of materials: a spill of stain on the floor of the garage, or contaminated sawdust that had been picked up during the sanding operation or had become contaminated when staining material was spilled. (DF ¶ 61; Def. Ex. 8 at 42; Pl. Ex. G at 7-8). In either case, according to Klem, "the materials that initiated the combustion process were (or would have been) left by the painters[.]" (Pl. Ex. G at 8). Thus, as Klem and Hurteau concluded in their Fire Investigative Report:

> Given the facts of this incident, we conclude that it is more likely than not that the ignition process began as a result of the spontaneous combustion of contaminated (stained) materials left by the painters the day before the fire. The materials became contaminated as the result of the stain being spilled in the area of the fire origin. In any case the materials should not have been left within the garage and all materials contaminated with stain should have been placed in

-9-

> a metal container filled with water and removed from the building. There was no evidence that this action occurred. Had it occurred, their removal would have prevented this fire incident.

(Id.).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III. ANALYSIS

Dalla Pola has moved for an order to exclude Klem's expert opinion regarding the likely cause of the fire on the grounds that it rests on an unreliable foundation. Specifically, the defendant argues that there is "no reliable evidence to support the key facts underlying the expert opinion as to either the spill or the presence of the cloth bag of contaminated sawdust." (Def. Mem. at 1). Therefore, he contends that Klem's expert testimony is inadmissible at trial, that there is no evidence in the record to support Chubb's theory of causation, and that the court must enter summary judgment in favor of the defendant. (Id. at 1-2). For the reasons detailed below, this court finds that Dalla Pola's motion lacks merit and must be denied.

### A. Admissibility of Chubb's Expert Testimony

#### Standard of Review of Expert Testimony

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). That Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has held that these requirements impose a duty upon the trial judge "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). The trial judge has broad discretion to determine the reliability and relevance of an expert's proposed testimony. See Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002) ("We accord the trial court broad deference in its determination as to the reliability and relevance of expert testimony").

### **Defendant's Challenge to Klem's Expert Testimony**

In the instant case, Dalla Pola does not challenge Klem's qualifications as an expert in the area of fire investigation. Nor does he dispute that Klem's testimony regarding the cause and origin of the fire is relevant to the matters at issue in the litigation. Moreover, Dalla Pola does not contend that Klem employed an improper

-11-

methodology for investigating the source of the fire. Rather, the defendant argues that there is no reliable factual support for Klem's theories that the painters spilled stain in the garage, or that they left a bag of sawdust or contaminated sawdust there. (Def. Mem. at 5-14). Accordingly, he asserts that the plaintiff's expert testimony is speculative and is therefore inadmissible under Rule 702 of the Federal Rules of Evidence.

"Objections of this type, which question the factual underpinnings of an expert's investigation, often go to the weight of the proffered testimony, not to its admissibility. As such, these matters are for the jury, not for the court." <u>Crowe</u>, 506 F.3d at 18 (internal citations omitted). <u>See</u> <u>also</u> <u>Larson v. Kempker</u>, 414 F.3d 936, 941 (8th Cir. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination" (quotations and citations omitted)). "It is 'only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury [that] such testimony [must] be excluded.'" <u>Larson</u>, 414 F.3d at 941 (quoting <u>Loudermill v. Dow Chem. Co.</u>, 863 F. 2d 566, 570 (8th Cir. 1988)). The defendant has not shown that Klem's testimony falls within this exception, and that his expert opinion is inadmissible. Therefore, the weight of that testimony must be evaluated by the finder of fact at trial.

The record presented to this court contains factual support for Klem's proposed scenarios regarding the cause of the ignition in the Higginses' garage. For example, but without limitation, Klem's theory that the painters spilled stain in the garage is supported

by evidence showing that Pereira had been performing sanding and staining work on the day preceding the fire, by the conclusion of the local fire and State Police officials that the fire originated in the area near the metal shelving unit where the painters had stored paint and stain, and by the discovery of staining material on the floor mat located near the metal unit. (See Pl. Ex. A at 3-4; Pl. Ex. G at 5-6; Pl. Ex. H at 55). It is also consistent with Lieutenant Gray's assessment that the fire was probably caused by the spontaneous combustion of staining materials that had been left in the garage by the painters, as well as with the results of the laboratory analysis, which detected the presence of a substance "with a moderate tendency to self heat" both on the floor mat and in one of the paint cans recovered from the garage, and identified that substance as a possible source of the material on the floor mat. (See Pl. Ex. D; Pl. Ex. H at 56). With respect to Klem's opinion that the fire may have been caused by contaminated sawdust, that theory is supported by Trooper Bramante's conclusion that the fire originated in the precise location where Pereira reportedly left a large bag of sawdust. (See Pl. Ex. A at 3-4). Furthermore, it is entirely consistent with Trooper Bramante's opinion that "the most probable cause of this fire was spontaneous combustion involving the cloth bag of sawdust and other possible materials." (Id. at 4). Accordingly, the defendant's assertion that Klem's opinion rests on a speculative and unreliable factual foundation is belied by evidence in the record.[2]

---

[2] The defendant's effort to compare the facts of this case with the circumstances presented in State Farm Fire & Cas. Co. v. Steffen, 948 F. Supp. 2d 434 (E.D. Pa. 2013) is

The fact that Klem's opinion is based on circumstantial rather than direct evidence does not render his testimony unreliable. "By the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony." Ricci v. Alt. Energy Inc., 211 F.3d 157, 162-63 (1st Cir. 2000) (quoting Minerals & Chems. Philipp Corp. v. S.S. Nat'l Trader, 445 F.2d 831, 832 (2d Cir. 1971)). Moreover, Klem's inability to identify the precise source of the fire does not defeat the admissibility of his expert opinion in this case. Under either of Klem's proposed scenarios, the cause of the fire would be attributable to Dalla Pola. See Tolentino v. United Parcel Serv., Inc., No. 98-CV-10369-MEL, 2001 WL 92201, at *5 (D. Mass. Jan. 11, 2001) ("The plaintiffs are correct that if Klem's testimony is believed, they need not prove which of the two circumstances (smoldering cigarette or oily rag) caused the fire because either cause would be attributable to [the defendant]"). Therefore, his testimony promises to "help the trier of fact to understand the evidence" regarding the source of the fire. See Fed. R. Evid. 702.

---

misplaced. In that case, the plaintiff's expert opined that the fire at issue occurred when the defendant carelessly discarded smoking materials into a trash can. Steffen, 948 F. Supp. 2d at 442. However, the expert's theory was based on nothing more than the fact that the defendant was a smoker. Id. at 442-43. Thus, as the court found, there was no factual support for the expert's assumptions that the fire was caused by "an 'open flame' ignition source," that the defendant "'dropped' the assumed-to-exist open flame into the trash can," and that "'combustible materials' – of which there [was] no direct or circumstantial evidence – were ignited." Id. at 443. Consequently, the court ruled that his opinion regarding causation was "nothing more than a hunch that fails to satisfy Fed. R. Evid. 702(b)'s evidence and data-based standard." Id. Here, in contrast, the record contains circumstantial evidence which supports Klem's expert testimony. Steffen, therefore, is inapposite.

Dalla Pola attempts to undermine Klem's testimony by attacking the credibility of the evidence supporting his opinion. For instance, in connection with his argument that the record lacks any evidence of a spill by the painters, the defendant relies on evidence that Dalla Pola and his crew were tidy workers who cleaned up after themselves; Harrison Higgins' testimony that he never observed any spills or detected the smell of open paint or stain in the garage; Harrison's failure to notice any stain in the garage or to observe the workers cleaning up in the area of the metal rack; evidence that the plaintiff's experts failed to question witnesses about the existence of a spill; and undisputed evidence that no rags or absorbent materials were recovered from the fire scene. (See Def. Mem. at 7-8; DF ¶¶ 4-5, 17, 25-27, 54, 72-77). Similarly, the defendant attempts to discredit Pereira's reported statement about leaving a bag of sawdust in the garage by pointing to facts, such as the investigators' failure to recover any physical evidence of sawdust or a cloth bag, and Harrison Higgins' statement that he did not notice any bags or encounter any obstacles in the garage, which could be viewed as inconsistent with Trooper Bramante's reported account of his conversation with Pereira. (See Def. Mem. at 9-10; DF ¶¶ 18-19, 84-88, 95). Dalla Pola also notes that Portuguese is Pereira's primary language, and he emphasizes Pereira's limited knowledge of English, as well as statements that Pereira made during his deposition, to challenge the reliability of Trooper Bramante's Report and to support his assertion that Klem's testimony is speculative. (See Def. Mem. at 10-13; DF ¶¶ 39, 42-43).

This court finds that Dalla Pola's arguments are insufficient to warrant the exclusion of Klem's expert opinion. While there are grounds for cross-examination, the facts relied on by Dalla Pola do not render the plaintiff's factual scenario unworthy of consideration by the jury. Notwithstanding the defendant's assertions to the contrary, this is not a case where the "expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury[.]" Larson, 414 F.3d at 941 (quoting Loudermill, 863 F.2d at 570). Rather, as described above, the record contains ample facts that provide reasonable support for Klem's conclusions. Even assuming, arguendo, that this court were to conclude that "the factual underpinning of [the] expert's opinion [was] weak," the challenges by the defendant at most affect "the weight and credibility of the testimony – a question to be resolved by the jury." Milward v. Acuity Specialty Prods. Group, Inc., 639 F.3d 11, 22 (1st Cir. 2011) (quotations and citation omitted). The evidence cited by the defendant merely illustrates the existence of factual disputes, and confirms this court's conclusion that questions regarding the soundness of Klem's testimony must be resolved at trial rather than on a motion for summary judgment.

The defendant's assertion that Klem ignored evidence of alternative sources for the fire is similarly unpersuasive. (See Def. Mem. at 7-10). As Klem and Hurteau described in their Investigative Report, Chubb's investigators conducted a thorough investigation, which involved, among other things, discussions with all of the relevant witnesses, as well as with the public sector officials who performed the initial investigation of the fire scene. (Pl. Ex. G at 3-6). They also considered various fire scenarios, including the

possibility that the cause of the fire was electrical. (Id.). To the extent Dalla Pola wishes to expose any alleged flaws in Klem's expert analysis, he will have an ample opportunity to do so through cross-examination and the presentation of evidence at trial. See Milward, 639 F.3d at 15 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (quotations and citations omitted)). However, his motion to exclude the plaintiff's expert testimony is denied.

### B. Defendant's Motion for Summary Judgment

Dalla Pola's motion for summary judgment is premised upon the exclusion of Klem's expert opinion. Thus, the defendant argues that in the absence of Klem's testimony, "there is no admissible evidence to establish that the Defendant caused the subject fire and as such summary judgment must enter in the Defendant's behalf." (Def. Mem. at 15). In light of this court's ruling on the motion to exclude Klem's testimony, Dalla Pola's motion for summary judgment also will be denied. This court notes, however, that there is other evidence in the record– namely, Trooper Bramante's and Lieutenant Gray's assessments that the fire was probably caused by the spontaneous combustion of materials that the painters had left in the garage– on which Chubb may be able to rely in order to establish causation. For this reason as well, Dalla Pola has not shown that he is entitled to judgment as a matter of law with respect to the plaintiff's claims.

### V. CONCLUSION

For all the reasons described herein, the "Defendant's Motion to Exclude Plaintiff's Expert Opinion and Motion for Summary Judgment" (Docket No. 32) is DENIED.

                                               / s / Judith Gail Dein
                                               Judith Gail Dein
                                               U.S. Magistrate Judge